This time we'll hear Barnaby v. Berryhill. Good morning. Good morning, Your Honor. I'm Mark Schneider. I represent Timothy Barnaby and the Social Security Appeal. And the question here was, was Timothy Barnaby able to perform light work when he was 50 years old? And the evidence shows unequivocally that he had serious emergency lung surgery in July and August of 2015. Could you just orient me? Do I understand that he is receiving Social Security disability benefits as of now? No, he's not. He's receiving SSI benefits, which is different from Social Security disability benefits. Because of his age? That's because of age? No, it was not because of age. Actually, I made a mistake. I did not file the decision granting him SSI benefits with the district court when I went back and looked at the record. But I believe as of April 2017, he didn't change his age category, but for some reason they determined he was disabled on that date and he's getting SSI. And SSI, you get less benefits than Social Security and you don't get Medicare. So the issue is when he was age 50, when he had an onset date, was he able to work? Or when he had his surgery, was he able to work? But this is not a case where he aged out and got benefits because of his increased age. So the issue here, was he able to perform light work because of his age when he was diagnosed? Yes. He had had major surgery on his lung and that was in 2015. But during this whole period, he had been diagnosed with moderate to severe COPD. He had had problems walking. He at various times couldn't walk 200 feet or 50 feet. His cardiologist noted that he could not walk more than five and a half minutes. The conditions that he had . . . I couldn't find a doctor's report that he was in fact disabled before the post-hearing documents that were filed with the letter to the magistrate judge. Where in the administrative record does it say he was disabled? Well, the doctors don't say he's disabled and that is not the standard. It's what the issue I think . . . He couldn't find a diagnosis of impairment either. Well, he had lung surgery and he testified to his limitations. And the law is that if you have a condition that could reasonably produce the limitations he has, you have to assess his credibility. Nobody said he couldn't work, but there were many reports about his limitations and breathing. And so the ALJ assesses his credibility. And his testimony was supported by the clinical and objective tests and the surgery. The ALJ picked up on the fact that he was able to do some household chores, that he used the riding mower twice a week, he could make sandwiches, that he went shopping. These are not the kind of conditions that allow you to assume a person's not being credible. He testified that he got out of breath. He had a long history of working, of doing hard work. And, of course, that should enhance his credibility. There is no reason he would want to stop working. The judge said that he had received conservative treatment. His major lung surgery, conservative treatment. He received 22 medications for his diabetes, for his anxiety, for his headaches. The judge said that he was able to complete a form that clearly his wife filled out. The judge relied on this one fact where Dr. Capelli... That would have to do with whether he was illiterate. But the jobs that were identified that he could do did not seem to involve reading and writing. Yeah, and I concede that. But the issue is whether he was credible or not, whether his conditions, whether there was objective evidence of his conditions that would support his testimony. He used oxygen every night. The one thing, the one factor the judge, ALJ, relied on, one of them was that he said he could walk three to four miles a day. Well, he had testified he could walk three to four minutes a day. Throughout the record his doctors were saying you need to exercise more. You need to do something. There was that one note that he walked three to four miles a day. He never was able to walk three to four miles a day. If he was able to do that, he'd be working. That was a transcription error. If his doctors were advising him to exercise, it means he's capable of doing that which constitutes exercise. Well, no, it means he should do it, but he wasn't able to do it. I mean, he did quit smoking. Did his doctors know whether he could do what they were recommending? Doctors advise you to lose weight. Doctors advise... They advised me to lose weight and get exercise. I appreciate that. And I don't always do that. It may have been better for him. But there was, the bottom line is, this is not substantial evidence. You have to look at the facts from both sides. You look at, with that lung surgery, would he be able to do light work, which means standing, walking, pushing, pulling, lifting six to eight hours a day, as of 2013, or at least as of the date of his lung surgery. Thank you. Good morning. Good morning, Your Honors. May it please the Court. My name is Johanny Santana and I represent the Defendant Epperle, the Commissioner of Social Security, in this matter. At issue in this case is whether substantial evidence supports the Commissioner's decision that Barnaby retained a residual functional capacity for light work with some additional limitations and whether Barnaby failed to meet the 405G standard of new evidence submitted to the District Court. The Commissioner's decision should be affirmed for the following four reasons. First, the ALJ appropriately determined Barnaby's severe impairment at meeting the listings at Step 3 of the sequential evaluation. Second, the ALJ's RFC was supported by substantial evidence, including objective medical and non-medical evidence. Third, at Step 5, the ALJ appropriately identified jobs that Barnaby could perform existing in the national economy. Yeah, well, I know three jobs were identified, but one of them was not really light work. One of them was medium. On that point, Your Honor, I would actually like to point out an error in the Commissioner's decision. The position identified, the DOT code was a typo. The last number was off. So upon review of the record, that position that the vocational expert identified was actually a garment bagger, not a grocery bagger. And upon reviewing the DOT, the garment bagger . . . What does a garment bagger do? A garment bagger, Your Honor . . . Puts garments into bags? I understand, but . . . Yes. When do you put garments into bags? At a dry cleaning facility or at a laundry facility, I assume. It also says you hang garments on a holder in a machine, and you pull the plastic from the roll to envelop the garment. You push the button . . . Dry cleaning. Yes, dry cleaning, essentially. And so that job is actually light work. So all three jobs that the ALJ found were viable. Barnaby focuses on whether there was substantial evidence to support the ALJ's decision that he could perform light work. But looking at the objective medical evidence, his doctors consistently noted that he was doing clinically well, despite his moderately severe COPD. He was regularly encouraged to exercise, and in quantifiable measures, including that he should climb a flight of stairs. I don't think he's claiming that the COPD constitutes the basis for the claim. I think he's claiming that there are other things. Yes, Your Honor. Even the COPD combined with the other things, there's still quantifiable data in the medical treatment notes showing his functional ability. And so to climb a flight of stairs in his house ten times in a day, his doctors noted that he was quite active. He reported to his doctors that he walked three to four miles in a day. And even though Barnaby contests that, absent compelling evidence to the contrary, there's no reason to doubt that notation in Dr. Cabelli's notes. What about Dr. Racine's disability evaluation? It sounds like he's got some real problems. Your Honor is referring to the opinion submitted to the district court, correct? Yes. The first point to address that is that Barnaby didn't meet good cause to submit that to the district court. But addressing that substantively, even that report is not corroborated by the in 2016 that he could sit for two to three hours, stand for two to three hours, and lift 100 to 110 pounds. Reviewing the opinion by Dr. Racine submitted to the district court, he opined that he could stand or walk for less than two hours, which contradicts Barnaby's testimony about his own capabilities. He also opined that he could only lift 10 pounds or less, but Barnaby testified that he could lift up to 110 pounds. Finally, Dr. Racine opined that Barnaby could never climb stairs, and yet the treatment notes show that he was recommended to climb a flight of stairs at least 10 times a day. So even substantively, that report is not supported by the evidence in the record. Additionally, Barnaby mentions lung surgery that he had in 2015, but we have treatment notes afterwards from November of 2015, so three to four months later, from Dr. Cabelli, reviewing or recognizing that he had this lung procedure, finding that he was, and I quote, very stable and well controlled on his medication, so much so in fact that Barnaby was rarely using some of the medication that he was prescribed for his COPD. And again, we have his testimony in 2016 now, a year later after that lung procedure, showing that he, for example, shops for four to six hours in a day, once a month, that again, he can sit for two to three hours, stand for two to three hours, lift 100 to 110 pounds. So the evidence as a whole shows that he is capable of performing light work. Turning to the evidence submitted to the district court, Barnaby failed to show good cause here. Initially, he did not provide a reason. Later, in objecting to the magistrate's report and recommendation . . . Good cause for what? Good cause for the opinion by Dr. Racine submitted to the district court. That we told him. Being late. Yes. Being late, that's the good cause, right? Well, he alleges that that is the good cause. But looking at this case closely, he admitted to the magistrate that this evidence could have been obtained earlier. And even looking back at the administrative level, the agency requested an opinion from Dr. Racine and that went unanswered. Barnaby, through his counsel, affirmed that the record was complete at the hearing. In fact, the record was held open for an additional two weeks for Barnaby to evidence to the appeals counsel. So there was ample opportunity for Barnaby to submit these records earlier. He alleges that there's . . . The report is dated April 24th, 2017. Yes, Your Honor. So is that still within the time it was before the ALJ? No, that is after the ALJ's decision in November of 2016. So he could have obtained the report earlier. That's what you're saying. Is that right? Yes, Your Honor. And Barnaby himself admits that he could have obtained the opinion earlier. I think in stating that he has good cause, he relies on the Pollard case, but that is distinguishable from this case because in that case, Pollard was pro se. Here, Barnaby was represented throughout the administrative level. The agency made efforts to request a medical source statement from Dr. Racine. The administrative law judge asked Mr. Barnaby whether any records were missing and he affirmed that there were not, with the exception of Barnaby himself admits that he could have obtained the report earlier. Therefore, this case is distinguishable from Pollard where good cause was found simply because the report didn't exist earlier. With respect to Your Honor's question about the subsequent application, Barnaby was granted supplemental security income in April of 2017 and that decision was dated August 2017, but that subsequent application is not per se evidence of disability in this matter. We have an earlier onset date. Is that it? No, Your Honor. For the supplement SSI, the alleged onset date is the date of the application. So in that case, it would be April of 2017. So you have a different alleged onset date. There are also different impairments alleged. This is a much earlier onset date. Yes, this is April of 2013. So you have a different alleged onset date, different impairments, different evidence, and in accordance with 405G, the record here was closed as of the date of the administrative law judge's decision. Therefore, the fact that he was subsequently granted SSI benefits does not provide a basis to disturb the ALJ's decision. Unless there are any further questions, Your Honors, for the foregoing reasons, we respectfully request that the Court affirm the Commissioner's decision as it was supported by substantial evidence and find that Barnaby failed to meet the 405G standard for new evidence submitted to the District Court. Thank you. Thank you. Review rebuttal. Thank you. Now, I agree that I should have submitted Dr. Racine's report earlier, but in fact, we had Nurse Practitioner Howell's opinion limiting his walking that was submitted to the Appeals Council, and the Appeals Council didn't reference it at all. It just noted that it was there and didn't say how that entered into the calculus at all, and they really had an obligation to look at that factor regarding his ability to walk, which is, for doing light work, the ability to stand and walk for six hours is the real kernel here. There is no evidence They're not obligated to comment on every piece of evidence. They're not, but they are supposed to consider it, and they didn't consider it at all. How do you know that? Well, they didn't say they considered it. That's a different matter. But if they had considered it, then I think they would have reversed because that does show he had limited ability to walk. But there is no evidence of any deterioration between November of 2016, when the ALJ found he was not disabled, and April 2017, when he was found disabled. I think the district court should have considered that. It's not determinative. And the Commissioner emphasizes that he was regularly found to be stable, but stable just None of the doctors said he was exaggerating. Why would he testify he could lift 100 pounds and then say he got out of breath walking or couldn't walk more than 200 feet? That that doesn't make sense that somebody would be credible in admitting something that could be held against him. He is a tough guy. He was a laborer, and he probably could lift 100 pounds. I probably could once in a while, too. But he said that he couldn't lift 10 pounds regularly throughout the day. The vocational expert here said that he could take oxygen to work and do work. There is no evidence any place that any employer would allow you to take oxygen to work. There's no evidence supporting the vocational expert's testimony about that. The oxygen thing, is that for all three of the jobs identified? Yeah, I think if you look at the transcript, I asked her, would an employer allow you to bring portable oxygen to work? And she said, yes. There is no basis for that. There are no studies. What's the basis for saying he would need to take portable oxygen to work? Well, he was using oxygen every night. And that's on the night. But I mean, to work. But if he had to work, he was also testifying he didn't do much. You're right, that's a good question about whether he would have to. But- I'm just trying to figure it out. I'm just trying to figure it out. Sure, yeah. Finally, the ALJ limited him to limits to concentrated exposure to irritants. But he, it's not just concentrated exposure. I mean, we talked about him working, bagging clothes at a dry cleaner. I mean, is that something that you could do? Could a person who can't- he really is limited in any exposure to any kind of irritants or any extremes in temperature. But if we use the substantial evidence test as articulated by the Supreme Court and by this court, that you have to look at the evidence. It's not just a shred or a scintilla or a touch of evidence. It means looking at it from both sides. In light of all the evidence of his surgeries and disability, if you find he was testifying credibly, then he was unable to perform light work. And if he was unable to perform light work at age 50, then he was disabled. Thank you. You're welcome. Thank you both. Well, a reserved decision.